IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HARISH C. DEVI,                                Case No. 6:12-cv-00841-AA
                                                    OPINION AND ORDER
       Plaintiff,

  v.

OREGON DEPARTMENT OF
CORRECTIONS,

       Defendant.
_____

Loren W. Collins
Stebbins & Coffey
745 California Street
P.O. Box 1006
North Bend, Oregon 97459
    Attorney for plaintiff

Ellen F. Rosenblum
Steven M. Lippold
Oregon Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant the Oregon Department of Corrections moves for summary judgment on plaintiff Harish Devi's claims pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND

In 1995, plaintiff, who was born in Fiji and is of Hindu religion and descent, began working as a correctional officer at defendant's Shutter Creek Correctional Institution ("SCCI"). In 2003, Tim Causey was appointed superintendent of SCCI; since that time, no minority candidate has been promoted to the position of sergeant, although at least one minority sergeant was transferred thereto during Causey's tenure. In 2007, plaintiff applied for a vacant sergeant position but eventually withdrew his name because of concerns regarding shift changes associated with that promotion.

On October 13, 2009, Causey sent an email to all staff members regarding upcoming changes to an alternative incarceration program, in which he stated "[u]nderstand that there are no sacred cows. Everything is open for review." Collins Decl. Ex. 1. The following day, on October 14, 2009, plaintiff informed Causey that "the term 'sacred cow' could be found to be offensive to someone of Hindu decent like myself . . . I am sure that you meant no disrespect of using the term 'sacred cow' but when it is used loosely it can be taken that way." Id. On October 15, 2007, Causey responded to plaintiff via email: "I apologize that what I said was offensive to you and your faith, that certainly was not my

Page 2 - OPINION AND ORDER

intent. I will be more careful in selecting phrases in the future." Id.

In 2011, plaintiff applied for one of three sergeant openings at SCCI. Thirty-two candidates were referred for the position from defendant's recruitment unit, all of whom were offered first-round interviews. Excluding plaintiff, twenty-four candidates were Caucasian males, four were Caucasian females, two were African-American males, and one was a Hispanic male. Plaintiff performed well during his first interview and was advanced in the hiring process along with ten other candidates, all of whom were Caucasian. Thereafter, the remaining candidates prepared for the second round of interviews by reviewing defendant's policies and procedures. Corrections Officer and candidate Clark Anderson also solicited and received advice regarding how best to prepare from several employees, including Lieutenant Tracy Williams.

On July 7, 2011, plaintiff participated in the second and final round of interviews. Institutional Security Manager Corey Fhuere, Transitions Manager Sonny Rider, Executive Assistant Julie Martin, and Williams (collectively the "panelists") were responsible for interviewing, evaluating, and ranking the candidates. They were neither provided with background materials about the candidates nor were they given criteria to use in selecting who to promote. However, each panelist had prior experience working with and/or supervising sergeants and therefore were familiar with the characteristics that defined a good candidate for promotion.

Page 3 - OPINION AND ORDER

Upon his arrival at the interview, plaintiff was provided with eight interview questions and was instructed to read through and answer them when he was ready. While plaintiff was providing answers, the panelists made various notes on the interview form. These notes reflected both plaintiff's strengths and weaknesses. For instance, Rider was very impressed by plaintiff's familiarity with the policy for emergency planning. Conversely, Rider and Martin each made a notation about plaintiff's lack of people skills and failure to engage with the panelists by regurgitating memorized material.

At the end of the second round of interviews, the panelists completed ten[1] "Interview After Action Reports," based on their interview notes, and ranked the candidates accordingly. Plaintiff's "Interview After Action Report" contained the following comments: "[p]rofessional dress," "[t]oo intent on selling knowledge of rules, policies, procedures . . . felt like regurgitation," "no personality skills showing through," "[d]idn't give interviewers a chance to speak," "like an information dump," "very good information and understanding of rules, over answered questions," and "focus on personal sacrifices of shift change." Collins Decl. Ex. 26. Plaintiff was ranked fifth, seventh, eighth, and tenth by Rider, Williams, Fhuere, and Martin, respectively.

In addition to the oral interview component, the candidates underwent a brief written exercise that was developed by Fhuere and

---

[1] The eleventh candidate elected not to complete the competitive hiring process.

Page 4 - OPINION AND ORDER

Martin. This exercise asked the candidates to respond to a particular factual scenario; it was designed to test the candidates' writing and grammar skills, as well as their ability to use a computer and follow instructions. Through a collaborative editing process, the initial fact pattern was altered to mirror an actual incident for which Corrections Officer and candidate Kyle Robbins received a lifesaving award. Plaintiff completed the exercise without assistance and within the requisite time-frame. Fhuere ultimately decided not to use the written exercise during the selection process.

After completion of the interviews and written exercises, the panelists met Causey to discuss the second-round candidates. The panelists recommended that Causey choose from among the top four candidates to fill the three sergeant vacancies. Anderson, Robbins, and Corrections Officer Charles Zousel were consistently and collectively the most highly ranked candidates; they received the top three rankings from Rider, Williams, and Fhuere, and were all ranked within the top four by Martin. Causey selected Anderson, Robbins, and Zousel for promotions.

On October 3, 2011, plaintiff filed a charge with the federal Equal Employment Opportunity Commission premised on his failure to be promoted. On February 17, 2012, the U.S. Department of Justice issued plaintiff a "Right to Sue" letter. On May 11, 2012, plaintiff filed a complaint in this Court, alleging discrimination and retaliation claims under Title VII; plaintiff subsequently amended his complaint but did not materially alter the nature of

Page 5 - OPINION AND ORDER

his claims. On January 16, 2013, defendant filed a motion for summary judgment.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact are resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

This dispute centers on whether defendant's failure to promote plaintiff to the position of sergeant constituted unlawful discrimination and retaliation under Title VII. Where, as here, there is no direct evidence of discrimination or retaliation, claims under Title VII are governed by the burden-shifting framework described in McDonnell Douglas, 411 U.S. 792, 802-04 (1973). Pursuant to this framework, the plaintiff must first establish a prima facie case. Manatt v. Bank of Am., NA, 339 F.3d 792, 800 (9th Cir. 2003) (Title VII retaliation claim) (citation omitted); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (Title VII discrimination claim) (citation omitted). If the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Manatt, 339 F.3d at 800 (citation omitted); Cornwell, 439 F.3d at 1028 (citation omitted). If the defendant "articulates such a reason, [the plaintiff] bears the ultimate burden of demonstrating that the reason was merely a pretext" for a discriminatory or retaliatory motive. Manatt, 339 F.3d at 800 (citation and internal quotations omitted); Cornwell, 439 F.3d at 1028 (citation omitted).

I.  Discrimination Claim

Title VII prohibits an employer from discriminating against an employee on the basis of race, national origin, or religion. See 42 U.S.C. § 2000e-2(a).

A.  Prima Facie Case

A plaintiff proves a prima facie case of employment discrimination by showing that: "(1) he is member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004) (citations omitted). It is undisputed "that Plaintiff satisfies the elements of a prima facie case." Pl.'s Resp. to Mot. Summ. J. 12; Def.'s Mem. in Supp. of Mot. Summ. J. 10.

B.  Legitimate, Non-Discriminatory Reason

Once the plaintiff evinces a prima facie discrimination claim, the defendant must set forth evidence demonstrating that the rationale behind its challenged actions was not discriminatory. Here, defendant submitted evidence establishing that race, national origin, and religion were not considered in assessing the candidates' suitability for promotion. See Williams Decl. ¶ 3 ("[i]n ranking the candidates, I did not take into account the candidates' race, national origin or religion"); Rider Decl. ¶ 3 (same); Fhuere Decl. ¶ 3 (same); Martin Decl. ¶ 1 (same); see also Collins Decl. Ex. A, at 10 (plaintiff acknowledging that the questions posed by the panel where not "slanted in an unfair way to advantage Caucasian candidates"). Instead, their rankings reflected judgments about each candidate's independent performance

Page 8 - OPINION AND ORDER

during the interview.

For instance, there is no indication that the panelists had access to or reviewed personnel records prior to the interview; in fact, defendant provided evidence denoting that Fhuere's, William's, Rider's, and Martin's recommendations regarding who to promote were based solely on the non-suspect characteristics displayed during the final interview. See Collins Decl. Ex. C, at 3-5, 9-12 (Rider deposition); id. at Ex. D, at 3-4 (Martin deposition); id. at Ex. E, at 11-14 (Williams deposition); id. at Ex. G, at 4-5 (Fhuere deposition). Defendant also provided evidence that plaintiff did not perform well during his second interview in the following key areas: (1) the ability to follow instructions; (2) communication; (3) reluctance to accept the sergeant position because it would result in a less desirable schedule; and (4) lack of interpersonal skills. See id. at Exs. 26-30; see also id. at Ex. C, at 6-8, 13; id. at Ex. D, at 7-12; id. at Ex. E, at 10, 18.

According to defendant, plaintiff received lower rankings during the competitive hiring process due to these shortcomings and, as a result, was not recommended by the panelists or offered a promotion by Causey. See Def.'s Mem. in Supp. of Mot. Summ. J. 10 (plaintiff was not promoted because his "performance during the final interview simply fell below a number of other candidates"). Therefore, defendant provided a legitimate, non-discriminatory reason for its decision not to promote plaintiff. See, e.g., Noyes v. Kelly Servs., 488 F.3d 1163, 1169 (9th Cir. 2007).

Page 9 - OPINION AND ORDER

C.  <u>Pretext</u>

Finally, if the defendant identifies a legitimate, non-discriminatory motive, the plaintiff then must demonstrate that the reason offered was pretextual. A plaintiff meet this burden in two ways: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." <u>Chuang v. Univ. of Cal. Davis, Bd. Of Trustees</u>, 225 F.3d 1115, 1127 (9th Cir. 2000) (citation omitted). "Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present specific and substantial facts showing that there is a genuine issue for trial." <u>Noyes</u>, 488 F.3d at 1170 (citation and internal quotations omitted). Nonetheless, "summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII cases in which the plaintiff has established a prima facie case because of the elusive factual question of intentional discrimination." <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1377 (9th Cir. 1987), <u>cert. denied</u>, 498 U.S. 939 (1990) (citations and internal quotations omitted).

Plaintiff argues that the panelists' "excuses"[2] for not

---

[2] Plaintiff criticizes "the subjective nature of [defendant's] interview process." Pl.'s Resp. to Mot. Summ. J. 17. Yet as plaintiff acknowledges, "subjective employment criteria [are] not 'unlawful per se.'" <u>Id.</u> (quoting <u>Sengupta v. Morrison-Knudsen Co., Inc.</u>, 804 F.2d 1072, 1075 (9th Cir. 1986)). In any event, the Court regards defendant's legitimate, non-discriminatory reasons with the requisite level of scrutiny. <u>See</u>

Page 10 - OPINION AND ORDER

recommending him for a sergeant position are "inconsistent" and "illogical," and therefore not credible, because: (1) he was "never . . . instructed to wait for the interview panel to ask questions but, instead, was simply told to read through the questions and start when he was ready," and "there is no contemporaneous documentation or mention of" his failure to follow instructions; (2) his past performance reviews and prior interview scores demonstrate that he has no problems with communication; (3) Anderson expressed similar concerns over the impact the new role of sergeant would have on his home life but was nonetheless offered a promotion; and (4) "other irregularities in [the] selection process showing favoritism to white males," such as the fact that "Anderson [was] helped by . . . Williams" and "the written exercise was discarded after Robbins and Zousel did poorly [on it]." Pl.'s Resp. to Mot. Summ. J. 14-29 (citations omitted).

Initially, the "other irregularities" that plaintiff identifies are not evidence of disparate treatment. It is immaterial that, prior to being appointed as a panelist, Williams instructed Anderson to review policies and procedures after he requested advice on how best to prepare for the interview; nothing precluded plaintiff from soliciting such advice from Williams or any other member of the corrections staff. The fact that plaintiff neglected to do so is not evidence of discrimination. In any event, there is no indication that Anderson was unfairly advantaged

---

Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1183 (9th Cir. 2007), rev'd in part on other grounds, 131 S.Ct. 2541 (2011).

Page 11 - OPINION AND ORDER

by the advice he received, as the record denotes that plaintiff extensively reviewed the relevant policies and procedures prior to his second interview, and displayed a good grasp of those materials therein. See Collins Decl. Exs. 26-30.

Likewise, defendant's decision not to take the written exercise into account is not evidence of disparate treatment. As plaintiff concedes, "[o]f the eleven candidates who took the written exercise, only Robbins and Zousel failed to complete the exercise within the designated time frame [and] only Zousel received a less than 'good' rating for grammar, punctuation and spelling." Pl.'s Resp. to Mot. Summ. J. 28. In other words, with the exception of Zousel and Robbins, the candidates performed comparably on the written exercise; however, excluding plaintiff, these candidates were all Caucasian. The Court's independent review of these written exercises reveals that plaintiff did moderately well, with some candidates performing more favorably and some less so. Compare Collins Decl. Exs. 36-37 (plaintiff's written exercise), with id. at Exs. 44-45, 52-53, 60-61, 67-68, 74-75, 81-82, 88-89, 95-96, 102-03, 109-10 (written exercises of other candidates). Accordingly, because defendant elected to disregard all of the written exercises, including those by Caucasian candidates who out-performed plaintiff, this conduct does not support a discrimination claim.

Further, plaintiff's prior performance reviews and first-round interview scores are not contravened by defendant's finding that he communicated poorly with the panelists. This is because, as

Page 12 - OPINION AND ORDER

discussed above, each candidate was evaluated based solely on his performance and presentation at the interview. See Collins Decl. Ex. C, at 3-5, 9-12; id. at Ex. D, at 3-4; id. at Ex. E, at 11-14; id. at Ex. G, at 4-5.[3] Thus, the fact that plaintiff's communication skills were evaluated highly in one context and poorly in another is neither demonstrative of an inconsistency nor evidence of pretext. See Rodriguez-Cuervo v. Wal-Mart, Inc., 181 F.3d 15, 20 (1st Cir. 1999).

The same cannot be said for the other inconsistencies raised by plaintiff. There is evidence denoting that all candidates were instructed to wait for the panelists to respond before moving onto the next question; the panelists also contemporaneously documented plaintiff's failure to engage in a dialogue and lack of interpersonal skills. See Lippold Decl. Ex. D, at 4-6; id. at Ex. E, at 4-5; Collins Decl. Ex. C, at 6; see also id. at Ex. 26 (plaintiff's "Interview After Action Report" reflected that he "was too intent on selling knowledge of rules, policies, procedures [such that he] did not give interviewers a chance to speak"). Plaintiff, however, "testified that he was never specifically instructed to wait for the interview panel to ask questions." Pl.'s Resp. to Mot. Summ. J. 14 (citing Collins Decl. Ex. A., at 11). Because the Court may not make "[c]redibility determinations

---

[3] Williams testified that a candidate's observed behavior that was inconsistent with how he or she presented at the interview could have a negative impact; similarly, Fhuere stated that a candidate's previous bad acts could adversely affect his or her ranking. See Collins Decl. at Ex. E, at 11-14; id. at Ex. G, at 4-5. However, both Williams and Fhuere indicated that these concerns were not implicated in regard to plaintiff. Id.

Page 13 - OPINION AND ORDER

or weigh the evidence" at this stage in the proceedings, plaintiff's statement creates a disputed issue of material fact. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000).

Moreover, both plaintiff and Anderson told the panelists that they understood taking the promotion would mean a loss of seniority and therefore would likely result in an undesirable schedule, and defendant acknowledges that these comments raised equal concern for both candidates; further, like plaintiff, Anderson's "Interview After Action Report" reflected other shortcomings in his performance during the interview. See Collins Decl. Exs. 26-30, 39-43; Def.'s Reply to Mot. Summ. J. 7 (citing Collins Decl. Ex. D, at 7-8). Yet Anderson was consistently and cumulatively ranked significantly higher than plaintiff and was ultimately promoted. Based on this evidence, a reasonable jury could infer that Anderson, a similarly situated individual outside of plaintiff's protected class, was treated more favorably. See Vasquez v. Cnty. of L.A., 349 F.3d 634, 641 (9th Cir. 2003) (an employer's more favorable treatment of similarly situated employees can be evidence of pretext).

Finally, plaintiff presented evidence that he "was the only person of color filling the rank of correctional officer" at SCCI and that no minority candidate has been promoted to sergeant during Causey's tenure. See Devi Decl. ¶¶ 9-10. "[S]tatistics have a place in disparate treatment cases [although] their utility depends on all of the surrounding facts and circumstances." Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 663-64 (9th Cir.

Page 14 - OPINION AND ORDER

2002) (citation and internal quotations omitted). Because the statistical evidence proffered by plaintiff is silent concerning myriad salient facts, including the number of sergeant vacancies that have been filled under Causey or the number of qualified minority candidates who have applied for such positions, it is not, alone, dispositive as to this issue. Nonetheless, the fact that "the last minority promoted to sergeant at SCCI was in the 1990's," combined with the other evidence of record, lends support to plaintiff's position. Devi Decl. ¶ 9.

In sum, a reasonable jury could conclude that plaintiff's poor interview performance resulted in him not being promoted pursuant to defendant's competitive hiring process; however, viewing the evidence in the light most favorable to plaintiff and drawing all inferences in his favor, a reasonable jury could also conclude that plaintiff was ranked less favorably for discriminatory purposes. See, e.g., Cornwell, 439 F.3d at 1033-34. Thus, in light of the standard governing Title VII claims, wherein summary judgment is appropriate only where evidence of discriminatory intent is totally lacking, the Court finds that plaintiff identified sufficient evidence to create a genuine issue of material fact as to whether defendant's reasons for not promoting him were pretextual. Therefore, defendant's motion is denied as to plaintiff's discrimination claim.

II. Retaliation Claim

Title VII prohibits an employer from retaliating against an employee for opposing an unlawful employment practice. See 42

Page 15 - OPINION AND ORDER

U.S.C. § 2000e-3. To establish a prima facie case of retaliation, a plaintiff must demonstrate that: "(1) [he] engaged in an activity protected under Title VII; (2) [his] employer subjected [him] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." <u>Thomas v. City of Beaverton</u>, 379 F.3d 802, 811 (9th Cir. 2004) (citation omitted). Defendant concedes that plaintiff's "complaint of Causey's use of 'sacred cows' is activity protected under Title VII" and that "he was subjected to an adverse employment action when he was not selected for promotion to sergeant." Def.'s Mem. in Supp. of Mot. Summ. J. 8-9. Accordingly, plaintiff's claim initially hinges on whether he can establish the requisite causal connection.

"To establish causation [the plaintiff] must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [his failure to be promoted] and that but for such activity [he] would [have been promoted]." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1064-65 (9th Cir. 2001) (citation omitted). This link can be inferred from temporal proximity between the protected activity and any adverse employment action or by demonstrating that the person making the employment decision was aware that the plaintiff had engaged in the protected activity. <u>Id.</u> at 1065; <u>Yartzoff</u>, 809 F.2d at 1376 ("an employer's awareness is essential to showing a causal link") (citation omitted).

Here, it is undisputed that the nearly two years that elapsed

Page 16 - OPINION AND ORDER

between plaintiff's initial complaint and his failure to be promoted is insufficient to raise the inference of causation based on temporal proximity. See Villiarimo, 281 F.3d at 1065. Further, it is undisputed that neither Fhuere, Rider, Williams, nor Martin knew of plaintiff's complaint during the relevant time period. See Pl.'s Resp. to Mot. Summ. J. 30-31; Def.'s Mem. in Supp. of Mot. Summ. J. 9. It is also undisputed that Causey, who was ultimately in charge of hiring and aware that plaintiff engaged in a protected activity, offered positions to the three candidates that were the most highly ranked by the panelists. Additionally, as discussed above, Fhuere, Rider, Williams, and Martin testified that race, national origin, and religion were not factored into their evaluation of the candidates. See Williams Decl. ¶ 3; Rider Decl. ¶ 3; Fhuere Decl. ¶ 3; Martin Decl. ¶ 1; see also Collins Decl. Ex. A, at 10.

Nevertheless, plaintiff contends that, even though "Causey felt bound to a large degree to select someone recommended by the interview panel," because "he acknowledges that the interview process was not 100% but, rather, was simply an element of the selection process," the fact that the panelists "lack[ed] awareness of the sacred cow comment is irrelevant." Pl.'s Resp. to Mot. Summ. J. 31 (citation and internal quotations omitted). Thus, according to plaintiff, because the panelists discussed the candidates with Causey prior to his decision, "[t]here is no break whatsoever in the causal connection." Id.

The parties have not cited to, and the Court is not aware of,

Page 17 - OPINION AND ORDER

any authority that addresses the significance of the decision-maker's knowledge of a protected activity where, as here, the adverse employment action was consistent with and/or based upon the recommendations of those who lacked knowledge of such activity. While the inverse may be sufficient to demonstrate causation, the panelists here did not possess a discriminatory intent and there is no indication that the hiring process itself was biased. See Galdamez v. Potter, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005). As such, plaintiff's position is untenable and not supported by the record. As plaintiff notes, the deposition testimony reveals that, while perhaps not dispositive, the panelists' recommendations played a large role in Causey's promotion decision. Moreover, regardless of any other factors that he considered, Causey ultimately acted in accordance with the panelists' evaluations and promoted the most highly-ranked individuals. See Collins Decl. Ex. 18-21.

Thus, based on the evidence of record and drawing all reasonable inferences in plaintiff's favor, the Court cannot conclude that plaintiff was not promoted because he complained about Causey's usage of the phrase "sacred cow" two years prior. Accordingly, although the evidentiary bar for demonstrating a prima facie case is low, the Court nonetheless finds that the requisite causal connection is absent. Therefore, plaintiff failed to establish a prima facie case. As such, defendant's motion is granted as to plaintiff's retaliation claim.

## CONCLUSION

Defendant's motion for summary judgment (doc. 19) is GRANTED as to plaintiff's retaliation claim and DENIED as to plaintiff's discrimination claim. Plaintiff's request for oral argument is DENIED as unnecessary. Lastly, in light of this decision, the Court encourages the parties to pursue judicial settlement of plaintiff's remaining claim.

IT IS SO ORDERED.
Dated this 9 of July 2013.

_____
Ann Aiken
United States District Judge